Case number 19-6036 Michael DeAngelo v. Vanderbilt University Argument not to exceed 15 minutes per side. Mr. Knight you may proceed for the appellant. Thank you very much. I'm Stephen Knight. I'm representing the plaintiff appellant Michael DeAngelo. I'd like to reserve three minutes for rebuttal please. All right. Thank you. I think we can probably all agree that one of the main goals of the federal rules of civil procedure is to ensure that all parties have a fair opportunity to present their case. In this case Mr. DeAngelo has not yet had a fair opportunity to present his case. His claims were dismissed after the district court converted a motion to dismiss to a summary judgment motion. On appeal we've raised two main issues. The first one is that the district court's judgment was based on resolution of a question of fact that the court had not identified as a fact that the court was going to consider. It was not a question that the court allowed discovery on or invited briefing on. The second main issue is that even considering the limited evidence that was put into the record for other purposes along with the unrebutted allegations of the amended complaint there's enough in the record to create a genuine question of material fact. Counsel let me ask you a three issues provided to the parties notice of three issues that she hoped they would cover in discovery. Did you request any additional and I don't think there's any limiting language that you couldn't go into other issues in discovery if there was please let me know but did you request the court to delve into other areas of discovery and the court said no you couldn't do that? So there's two answers to that your honor. First of all discovery when Vanderbilt filed his motion to dismiss discovery was stayed there was a blanket stay on discovery. That's orders that are documents 21 and 26 in the record. There was some while the motion to dismiss was pending that's document 32 and so that's why the court's order converting the motion specified that the parties would be allowed discovery on those issues because otherwise discovery had been stayed. Okay but you didn't answer my question. My question was did you ask to delve into other areas in discovery in addition to those indicated by the district judge and the district judge said no and refused you the opportunity to do so? That sounds like a yes or no question. Not after the court we resisted the initial stay after the court converted it to a summary judgment motion. I didn't ask you about a stay. If you could just answer the question. I'm sorry your honor I'm trying to answer the question. After the court converted it we did ask for some discovery that was denied about Vanderbilt's experience providing accommodations to students with autism spectrum disorder but as a general matter we stuck to the three issues. Was that presented as a discovery issue? You say you asked about some other issue there. Was that a did you present that as a discovery issue? Yes your honor. I believe that's document 48 in the record and the court it was in a case management order the court limited our um did not allow us to uh we had a we noticed a deposition of someone to testify about that but I think that's not an important only issue. Is that the only issue you asked to go into? Yes your honor. Yes. Okay. And the reason is um the court identified those three issues and said you may have discovery on these issues. We really didn't have any reason to seek discovery on the other issues because our understanding was that the court's summary judgment review was going to be limited to the issues identified by the court. Did the court say that? Uh that's not something you decided to surmise on your own. No your honor. The court's order says uh said it was converting um the motion to dismiss the summary judgment order and ask the parties to address three issues. I think the court said that it was going to limit his ruling to those three issues which is what you just suggested. Did the court say that? Well the court didn't explicitly say please address these issues and don't address any other issues. But I think that was certainly. That wasn't my question. The question was whether the court said it would limit his ruling to the information pertaining to those three issues. And you're not answering the question. I'm sorry your honor. I'm trying to answer your questions. The court did not explicitly say that it would not uh issue a ruling on issues outside of those three. Um but I think I think Vanderbilt has conceded in its brief that uh the party's understanding and the import of the court's order was that the summary judgment review was limited to those issues. I mean it wouldn't make any sense for the court to say um I want you to address these issues. You may take discovery on these issues and then not mention the fact that you could also take discovery on any issue you want and I might rule on any other issue. Do you identify maybe in your rebuttal where that concession is? Um specifically in the uh let's see. I hate to interrupt here. Maybe you could do that. Give it to me on Okay. Thank you your honor. Thank you. Yes. Are you done counsel? I'm sorry your honor. No. So the uh I'd like to focus on the the issue um having to do with the the court um ruling on a an issue that it had not identified. The issue that we were just discussing. I think that's the strongest basis on which to reverse the trial court's decision. This just a little background on the ruling. Of course Mr. D'Angelo was a student at Vanderbilt's business school. He was diagnosed with Asperger's syndrome. He didn't have any intellectual issues but he did have problems with social communication skills which could cause others to interpret his communications and associated behaviors as rude or um insensitive insulting. Uh and Vanderbilt um well and he raises two claims basically. One is a reasonable accommodation claim and that is that Vanderbilt recognized that this was a problem. It agreed and actually suggested that um Vanderbilt I mean Vanderbilt's professors Mr. D'Angelo's professors should be notified of the condition and given some education about how to help Mr. D'Angelo uh successfully um participate in Vanderbilt's MBA program. I'm sorry go ahead. No you um let me ask you one thing. Sure. His first semester he didn't have any problems and um there didn't seem to be any academic problems or behavioral problems. Then the subsequent um term all these problems cropped up. Why would we associate the problems with uh his alleged disability when he didn't have these problems uh previously and seemingly throughout his undergraduate um matriculation he didn't seem to have the problems because he did well academically and as far as I could tell from the record in every other way. So all of a sudden uh there's misconduct and misbehavior and he's ascribing all this to this Asperger's syndrome. Why is that contention even credible based upon uh his very adequate and uh if not outstanding performance previously? Your honor I don't know if I have an explanation of the timing of it. Um I think it's a pretty small sample set to uh decide that something else must be the reason because it didn't it didn't occur early on. I think there's plenty of reason to think that it was a problem uh if you look at all the comments that the professors and even administration made about um Mr. D'Angelo it's clear that they actually did perceive his communications as rude and antagonistic and that they held it against him. Faculty said he should never have been admitted, he shouldn't be allowed to graduate, uh called him names and this sort of thing. Well it just wasn't that they perceived it it actually was uh inappropriate if he's using profanity uh to professors and all kinds of things like that it's sort of more than just the perception. Oh I'm sorry go ahead and answer Judge Clay's question then I have a question. Sure that's that's right your honor but knowing knowing the reason for that behavior makes a big difference I can I can attest to that personally. In addition I just want to make clear Mr. D'Angelo wasn't dismissed because of misconduct or anything like that the the process by which Vanderbilt dismissed him or forced him to withdraw was explicitly by Vanderbilt's own conduct at all. He didn't raise this asperger's syndrome as an issue until he got in trouble uh it seems I mean he was doing well all these years and doing his first term at the business school and he never said he had this uh disability or needed an accommodation and when he starts misbehaving and not coming to class and not coming to class seemingly wouldn't have anything to do with his disability then he raises this uh syndrome that he claims he has. And counsel that is related to my question because there is a continuum of conduct from Mr. D'Angelo if he is requesting an accommodation or he's got a disability he has an obligation to put the does he actually provide notice to the university of his asperger's syndrome asperger's syndrome. Well so after his suspension in the fall of of 2015 he had a a Vanderbilt psychologist did an assessment and issued a report saying that he did have asperger's syndrome and there were a series of meetings with Vanderbilt's administration and people including their disability services department at which they discussed what can we do to help Mr. D'Angelo and they came up with various suggestions including the fact that his professors be notified of the condition and taught about how to help him participate in the program. But Mr. D'Angelo though was also not receptive to some of the offered accommodations was he not? I mean didn't he actually resist those? Initially your honor I think you have to look at the timing of that around the time that he had the issue with the professor and I'm guessing that the assessment he was first diagnosed that was around the time that Vanderbilt's disability services department reached out to him and he was not receptive to it at that time but in the subsequent months there were a number of meetings and he he was not only receptive to it but he and Vanderbilt together along with his parents agreed on a plan of action. Okay so I want to be very clear now and I know you're running out of time sure but Mr. D'Angelo filed his claim so what is it that he requested that Vanderbilt did not provide such that he has established the cause of action? So the the key request and I point out Van it's not only a request but Vanderbilt suggested it and Vanderbilt agreed to it was that Vanderbilt notify his professors of his condition and provide them education about how to deal with it how to interpret his behavior and how to mitigate any effect on the classroom. Okay I just mentioned that there was in this negotiation class which was a huge issue Vanderbilt met with him suggested you know this is a collaborative thing with teammates maybe you want to reconsider this and he was adamant so you can you can go over that spectrum of conduct that I talked about before and see where Vanderbilt made overtures recommendations offers and then evaluate Mr. D'Angelo's conduct against that but you know I have your position and I'm going to stop because you're out of time and that means I'm out of time. Thank you Your Honor. All right we'll we'll hear from your opposing counsel. You're on mute uh Mr. Garrett. Thank you. Ah there you are. I will catch on probably by the time I'm done. Tim Garrett here on behalf of the Appley Vanderbilt University as the court is aware this is a student disability discrimination case. The essence of the allegations is really unfair grading based on the student's disability but here there's no evidence that any of the decision makers that is the professors who gave the low challenge grades even due of the plaintiff's disability so the plaintiff has crafted this tenuous reasonable accommodation theory we submit that that theory is based upon speculation and is contrary to the record evidence of the various accommodations that were provided the very things that Judge Clay and Judge Donald were just mentioning we submit that the district court was correct in making its ruling on summary judgment. I'd like to first start in just the opposite order that we just had the discussion with Mr. Knight starting first with the accommodations that were provided and why the reasonable accommodation theory is speculative here the plaintiff's bias grading argument is that the low pass and failing grades that Mr. D'Angelo received were all based upon the professor's dislike of the plaintiff that were caused by his social deficits but that's speculative because number one there's no evidence that any of the grading is based upon like or dislike of the student in fact the plaintiff asked for an inference that it was only those professors who gave him low grades whose grades were tainted by like or dislike that is how do we know if this alleged tank well because the records were under and it's circular and speculative and Judge Clay even spoke to that just a moment ago he did fine for a while right he in fact had two of the three academic strikes that would have led to dismissal before Vanderbilt even knew of the disability before Vanderbilt would even have any of the professors would have even crafted this theory the plaintiff relies upon that they've decided that he's not an appropriate student for them and therefore come up with this way to have academic judgment as a subterfuge for the disability they learned he'd already had two strikes against him at the time furthermore the argument about the reasonable accommodation is contrary to the undisputed record evidence of all the various accommodations that were provided the very point that Judge Donnell make back making reference to Dean Christie who had said are you sure you want to be in this negotiations class but even beyond that there was he was allowed to return for the diagnosis we Vanderbilt made sure that he had group work in the applied investment management course in the spring of 2016 he and his parents were provided detailed instructions on how to complete graduation requirements by taking courses at another school in response to a request he made the plaintiff didn't follow up on any of that and as I believe it was Judge Donnell who also said Vanderbilt had reached out to him even before the diagnosis but in the fall of 2015 after he had already had some strikes against him from the spring of 2015 and asked and he was very resistant in fact he was well he was resistant and did not seek the assistance the evidence shows that Vanderbilt complied with all of the direct specific requests offered and tried to help him be successful but his academic record continued to suffer and he continued to do poorly and there's no question that he violated the academic strike limit and there's no question that Vanderbilt had submitted and if I could go to this there are academic difficulty reports that the plaintiff himself submitted that are contemporaneous records from each of the professors providing a legitimate non-discriminatory academic basis for each of low pass grades and each of the failing grades and so the record evidence even contradicts what plaintiff asked for in this speculation that somehow these professors and their was tainted by their dislike of the plaintiff when in fact contemporaneous notes and the academic difficulty reports that the plaintiff himself submitted in response to Vanderbilt's initial motion to dismiss showing that the court that there was academic justifications in each of the instances and I'm going to speak to that also on the accommodation that they make reference to as to educating the faculty. Candidly as a matter of practice Vanderbilt would never have informed professors in any such generalized fashion about a student's disability that information is confidential to be shared only on a need to know basis but Vanderbilt certainly would do that as needed in providing a student with specific assistance or in response to a specific request for assistance accommodation if that were needed for the practice for the for the request being made. So Mr. Garrett if Mr. DeAngelo went to the appropriate Vanderbilt personnel and and said I am in class x I'm having difficulty uh I'm willing to sign a release I want you to discuss my situation with that professor then that can be that can be accomplished in response to that request. Absolutely in fact Vanderbilt's practice is to just note that a particular student needs an accommodation or assistance without getting into the details that they have the EAD office to provide that without getting into the details unless those details are needed. Okay. With a specific accommodation requested for example a professor may get a request if somebody needs an extra hour or an extra 50 percent time on an examination and here for example the record is clear that in applied investment management course that he took in spring of 2016 after the disability was was identified he had trouble finding group work. Vanderbilt went to the steps to assist him in providing group work. Now as the district court correctly noted even then he had a low pass in that class showing that even that assistance didn't remedy the academic deficiencies that he was experiencing. Well did Mr. DeAngelo say though I had a low pass because my professor had um uh animus against me and there's no way my my performance could overcome that environment of animus that precluded my ability to succeed. What about that? Well and that's certainly his argument the problem there is that there is the academic difficulty reports in each instance which identifies the very academic justification. So if you will that's a legitimate non-discriminatory academic justification and the case law is abundant that courts give faculty the widest range of discretion in evaluating the academic performance of students and there's nothing in there that would support that this particular student's like or this particular student's behavior was disliked by the professor and therefore resulted in the the low pass. There frankly the the one grade that is the most at issue here is the grade in negotiation. That is the failing grade Professor Kennedy gave spring of 2016 that caused him to violate the academic strike and there Professor Kennedy provided uh the justification in the academic difficulty report that Mr. DeAngelo failed to properly complete two key assignments including the final paper when really really what he did was submit a paper that talked about video game characters and that was in negotiations. Now Mr. Knight talked about the legal standard that the court the lower court used. Frankly what the lower court did in converting this to a motion for summary judgment the court noted that the parties had both parties had presented materials outside the pleadings and that the court was inclined to consider them because they would be positive. It allowed discovery on the limited factual disputes that were that were a part of that analysis but there was no factual dispute based upon his grades that he actually had violated the academic strike limit. That is he had met the limit and there was no factual dispute that in each instance a professor had completed an academic difficulty report that provided the contemporaneous academic justifications. The only factual disputes related to three issues but those were the only factual disputes at that point. One was modules what the court was asking was has the plaintiff violated the strike limit at the end of module three in the spring of 2016 before he retook international financial markets and if each module is a separate grading unit he would have violated that academic strike limit at the end of module three which would have meant dismissal from the program before he ever completed the retake of international financial markets. There was a question about reasonable accommodation requested and that's when he made the allegation that Vanderbilt had made this promise. Vanderbilt chose not to dispute that allegation because it wasn't material. That is Vanderbilt basically said we're going to take that as true because as the lower court noted that was just a generalized request for educating the faculty and was not sufficiently specific to meet the requirements. Each time there was a specific request Vanderbilt provided and the court discusses that in some detail of the district court and then the third was there was an elect claim that there was an alleged rush review uh that Vanderbilt had tried to rush its review of his violation of the strike limit and the facts as played out in the discovery showed that they had not that he had been provided the opportunity to appeal he had been notified twice of his right to appeal he had been offered assistance to appeal and he had never appealed. We submit that the evidence shows that the plaintiff has not been able to establish that he was otherwise qualified for the that the district court did not err in the way it dealt with this and converting it to a motion for summary judgment. We submit that the plaintiff established his claim as a matter of law and we request an order affirming the district court's decision. All right in a rebuttal. You're on mute Mr. Knight. Thank you your honor. Most of our argument today has addressed the evidence of the cause of the low grades um that Mr. Angelo Mr. D'Angelo was given. Please keep in mind we have not taken discovery on that we have not had an opportunity to present evidence on that issue and our position is that issue was not properly before the district court except to the extent that the court referred to our allegations in the amended complaint. Earlier there was a question about where specifically did Vanderbilt concede that discovery was limited to the issues that the court identified and I want to I meant to compliment Vanderbilt and Mr. Garrett on their intellectual honesty on this point. They haven't played games with this. I think Mr. Garrett just even said in his argument that discovery was limited to those issues. On page four of their response brief Vanderbilt says that Judge Levy allowed the parties to engage in limited additional discovery on specified factual issues. There's similar comments on page 41 and 42 of the brief and I think that's the only fair reading of the court's order document 46. There's on pages 444 and 445 there's a paragraph about discovery which says the court is going to allow discovery the court specifically requests that the parties provide competent evidence explaining the following factual disputes and lays out those three disputes. The cause of Mr. D'Angelo's low grades, the cause of the academic strikes are not among those issues and therefore the trial court did not provide Mr. D'Angelo with notice and an opportunity to take discovery and an opportunity to brief that issue and it's not only unfair but it's inconsistent with rules 12d and 56 f about the procedure for converting a motion to dismiss to a summary judgment motion and so for that reason in addition to the reason that that there is plenty of evidence in the record to support Mr. D'Angelo's position we would ask that the court reverse the district court's decision and remand the case for further proceedings. Thank you. All right thank you and the case is submitted. Thank you both for your arguments and the next case may be called.